IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW SODERLIN,

                Plaintiff,

v.

LORI DOEHLING, ANGELA THOMPSON,
PAULA BRADY, TIFFANY GIMENEZ,
DEBRA BELLIN and
ANDREA JOHNSON f/k/a ANDREA LAMORE,

                Defendants.

OPINION AND ORDER

18-cv-899-wmc

---

In this *pro se* civil rights action brought under 42 U.S.C. § 1983, plaintiff Matthew Soderlin claims that a number of nurses and staff at the Redgranite Correctional Institution ("RGCI") failed to provide him with timely refills of prescription medications in violation of the Eighth Amendment deliberate indifference and Wisconsin negligence standards. The following motions are presently pending before the court: (1) motions by all defendants for partial summary judgment under Fed. R. Civ. P. 56(a) on the ground that Soderlin failed to exhaust all claims properly, save one regarding his hydrocortisone prescription not being timely refilled in early October 2017 (dkts. ## 34, 40); and (2) a motion by the state defendants (Lori Doehling, Angela Thompson, Debra Bellin and Andrea Johnson) to dismiss some of the negligence claims against them on the ground that Soderlin failed to file a proper notice of claim timely under Wis. Stat. § 893.82 (dkt. #34). For the reasons stated below, the court will: (1) deny defendants' motions based on improper exhaustion except for claims related to fludrocortisone; and (2) dismiss the state law negligence claims against Bellin and Johnson because Soderlin failed to name them in his notice of claim.

BACKGROUND[1]

During the times relevant to this complaint, plaintiff Matthew Soderlin was an inmate at RGCI and all of the defendants were employed by the Department of Corrections ("DOC") at RGCI, with the exception of Paula Brady and Tiffany Gimenez, who were both nurses employed by an outside agency that contracted with the DOC to provide care to RGCI inmates. Defendant Lori Doehling was the health services manager at RGCI until either June or September 2017, when she became a nursing coordinator for DOC's Bureau of Health Services.[2] Doehling's successor as HSU manager was defendant Angela Thompson. Finally, defendants Debra Bellin and Andrea Johnson were registered nurses at RGCI.

In his amended complaint, Soderlin alleged that he experienced delays in receiving his prescribed hydrocortisone and fludrocortisone medications between May and October 2017. In its screening order, however, the court determined that plaintiff could not proceed against any defendants on allegations concerning his failure to receive medications prior to July 12, 2017.

---

[1] The following facts are undisputed except as noted.

[2] Precisely when Doehling left her position in the HSU is in dispute. Although she has submitted an affidavit swearing that she left on June 10, 2017, (dkt. #38, ¶2), Soderlin calls the court's attention to a different case in which she swore that she left in September 2017. (*See McCalla v. Thompson et. al*, 18-cv-1895-JPS (E.D. Wis.) (Doehling Dec., dkt. #116).) However, there is no dispute that Doehling was no longer in the HSU on October 18, 2017, which is when Soderlin filed his sole inmate complaint concerning medication delays.

OPINION

I. Defendants' Exhaustion Motions

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Generally, to comply with § 1997e(a), a prisoner must not only assert a claim at the relevant prison, but must also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [prison's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all available appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

Specifically, the State of Wisconsin requires prisoners to file a grievance within 14 calendar days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6).[3] Moreover, this grievance must "clearly identify the issue" that the inmate seeks to raise. *Id*. § 310.09(1)(e). Finally, this exhaustion requirement is mandatory, *Woodford*, 548 U.S. at 85, and failure to exhaust requires dismissal of a prisoner's case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

---

[3] On April 1, 2018, a new version of Wis. Admin. Code § DOC ch.310 went into effect. For purposes of this case, however, the court refers to the December 2014 version of Wis. Admin. Code ch. DOC 310, which was in effect when plaintiff's claims arose.

3

Because exhaustion is an affirmative defense, defendants bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage then, defendants must show that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

There is no dispute between the parties that Soderlin filed just one inmate complaint related to the allegations in his Amended Complaint. In inmate complaint RGCI-2017-26629 filed on October 18, 2017, Soderlin wrote that "HSU is neglecting to refill my medication." (Inmate Complaint (dkt. #43-2) 6.) Soderlin further identified the "date of incident" as October 12, 2017, and the "time of incident" as "ongoing." (*Id.*) Describing the issue he was complaining about, Soderlin also stated: "This time I went w/o my meds for five days, and the previous times they failed to refill in a timely order." (*Id.*) Moreover, when asked to explain how he had attempted to resolve his issue before filing his complaint, Soderlin responded that he

> contacted HSU about this problem where they then tripled the amount of meds I got, but I still ran out. Then wrote to HSU Manager about problem on 10/11/17 and seen a nurse. They gave me my meds then and sent me away.

(*Id.*) Finally, Soderlin wrote that "out of my last 6 times I've put in for a refill for hydrocortisone 5 times they marked: 'ordered – will issue when received.' And then I ran out for between 2-6 days on those renewals." Soderlin did not include the names of any defendants in his inmate complaint, but complained only that "HSU" was neglecting to refill his medications in a timely fashion. (*Id.*)

In response to Soderlin's complaint, the Institution Complaint Examiner ("ICE") contacted defendant Thompson, who was manager of the HSU at that time. Thompson advised that Soderlin had submitted a medication refill that HSU had received on October 4, 2017, but the medication was not available right away, which meant that he did not receive it until October 12, 2017. ICE recommended that the complaint be affirmed, and as the reviewing authority, defendant Doehling agreed, concluding that: "Soderlin should not be without this medication. HSU staff should make every effort to get this medication as stat if out." There was no appeal from that determination.

Defendants assert that Soderlin's inmate complaint concerned a singular incident of plaintiff failing to receive his refill of *hydrocortisone medication for five days in October 2017*, and thus argue any claims concerning previous *or* subsequent delayed refills of hydrocortisone *and* any claims concerning delays in receiving fludrocortisone or other medications at any time must be dismissed.[4] In response, plaintiff appears to concede that he did not exhaust any claims concerning delays in receiving refills of fludrocortisone or other medications. Accordingly, those claims will be dismissed. As for the hydrocortisone delays, plaintiff points out his inmate complaint explained that he was not just complaining about the early October delay, but about the fact that since *June* of 2017, his

---

[4] Defendants Brady and Gimenez argue separately that this court should also strike plaintiff's opposition brief because it was filed 19 days late. The court declines to do so. Plaintiff has submitted documents showing that he submitted his briefs to the prison for mailing on March 10, 2021, and the prison processed his request on March 11, 2021. The court will apply the prison mailbox rule to plaintiffs' submissions and consider them to have been filed on March 10, 2021. For future deadlines, however, plaintiff should allow more time for processing and mailing.

hydrocortisone refill had been delayed on six different occasions, the October incident only being the most recent.

Reading the grievance as a whole, the court finds that it can be fairly read as raising a complaint about an ongoing pattern by HSU of failing to fill his hydrocortisone in a timely manner since June 2017, rather than one isolated incident that occurred on October 12, 2017. After all, by the time plaintiff filed his grievance, he had received all his medication, and as plaintiff emphasizes, he did not merely complain that HSU had failed to refill his medication promptly in October 2017, but wrote that "HSU is *neglecting*" to refill his medication, explaining that he had received his hydrocortisone late "the last 6 times" he'd requested a refill, and he was "scared that in the future that my meds may really run out for a period of time where I may die." Plaintiff's grievance also emphasizes his efforts to resolve this problem by directly contacting HSU, who tripled the amount of medication he could receive, but he "still ran out."

Based on these and other statements in the grievance, plaintiff was plainly *not* just challenging the most recent refill delay in October 2017, but rather the ongoing *pattern* of delay on the part of the HSU. Under these circumstances, the court is satisfied that plaintiff has met the exhaustion requirement with respect to his claim that his hydrocortisone refills were delayed on multiple occasions after July 12, 2017, even though some of those dates fall more than 14 days before he ultimately felt compelled to file his grievance. *See Turley*, 729 F.3d at 650 (finding exhaustion requirement meant where it was clear from grievance that plaintiff "was challenging not just specific incidents of lockdown, but Menard's lockdown policies in general."); *Nieto v. Dittman*, No. 16-CV-163-JDP, 2017

6

WL 3610571, at *2 (W.D. Wis. Aug. 22, 2017) (exhaustion satisfied because prisoner was complaining about an ongoing lack of care from prison officials and filed grievance "once he . . . realized that he would not be able to resolve his grievance with the medical staff informally," even though it was more than 14 days after the earliest instance of the denial of medical treatment); *Edwards v. Schrubbe*, 807 F. Supp. 2d 809, 812 (E.D. Wis. 2011) (same); *but see Compton v. Cox,* 12-cv-837-jdp, 2017 WL 933152, at *3 (W.D. Wis. Mar. 8, 2017)(plaintiff failed to properly exhaust where his grievance mentioned discrete events occurring four years earlier but did not suggest that he was complaining about an ongoing lack of care from prison officials).

Finally, although ICE did not mention the earlier medication delays, neither ICE nor Doehling, as the reviewing authority, suggested that plaintiff's complaint about earlier delays were untimely or outside the proper scope of the grievance. To the contrary, Doehling ruled in broad terms that plaintiff should not be without his medication, responding directly to his concern about an ongoing pattern of delays. "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love,* 655 F.3d 709, 722 (7th Cir. 2011).

For all these reasons, the court will grant defendants' motion for partial summary judgment only with respect to plaintiff's complaints about fludrocortisone (or other *non*-hydrocortisone medications), and will deny it in all other respects.

**II.     State Defendants' Motion to Dismiss State Law Negligence Claims**

Under Wisconsin law, a plaintiff seeking to bring a state-law claim against a state employee must first file a notice of claim with the state's attorney general. Wis. Stat. § 893.82(5). This notice must be "served upon the attorney general at his . . . office in the capitol by certified mail." *Id*. This service must also occur within 120 days of the event giving rise to the claim. § 893.82(3).  Among other requirements, the notice must include "the name of the state officer, employee or agent involved," and "[n]o claimant may bring an action against a state officer, employee or agent unless the claimant complies strictly with the[se] requirements." § 893.82(2m) (emphasis added).  Importantly, this statute is treated as "jurisdictional," meaning strict compliance is required. *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010); *Kellner v. Christian*, 539 N.W.2d 685, 690, 197 Wis. 2d 183, 195 (1995).

Here, the parties agree that plaintiff sent two notices of claims related to his negligence claims in this case. Unfortunately, plaintiff's first notice, dated December 20, 2018, was sent by first-class mail to the Wisconsin Attorney General, rather than by certified mail as required by the statute.  As the state defendants point out, a notice of claim sent by first-class mail does not satisfy the requirements of § 893.82. The Wisconsin Supreme Court has expressly held that the certified mail requirement must be followed. *See Sorenson v. Batchelder*, 2016 WI 34, ¶ 46, 368 Wis. 2d 140, 160–61, 885 N.W.2d 362, 372 (affirming dismissal of action after concluding that personal service did not comply with certified mail requirement in § 893.82(5)); *see also Kelly v. Reyes*, 168 Wis. 2d 743, 744, 484 N.W.2d 388, 388 (Ct. App. 1992) (affirming dismissal of action where plaintiff

used "regular mail, not certified mail to serve notice of his claim upon attorney general"); *Thomas v. Mashak*, No. 16-CV-496-BBC, 2017 WL 5195252, at *4 (W.D. Wis. Nov. 9, 2017), *aff'd*, 743 F. App'x 702 (7th Cir. 2018) (holding that notice sent by first-class mail did not satisfy requirements of § 893.82).

Plaintiff nevertheless claims that he submitted his December 20, 2017 notice to the prison mailroom for mailing by certified mail, and prison staff ignored his request or otherwise thwarted his attempt to use certified mail. However, because the statutory notice of claim requirements are jurisdictional under Wisconsin law, no equitable exceptions exist. As a result, even if plaintiff could *prove* his claim of prison staff interference, this court still could not find that his first notice complied with the statute, at least under current law in this state. *See, e.g., Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Whatever reason Mr. Weinberger may offer for his inability to comply, the fact is that noncompliance is fatal to the claim."); *Peckham v. Spitz*, 207 Wis. 2d 645, 559 N.W.2d 925 (Ct. App. 1996) ("Thus, whatever justification Peckham may wish to show for not complying with § 893.82 would not alter the fact of her noncompliance, which is 'fatal to [her] claim.'"); *Oney v. Schrauth*, 197 Wis. 2d 891, 904, 541 N.W.2d 229, 233 (Ct. App. 1995) ("The requirements of the statute cannot be waived and 'no basis exists for the equitable doctrine of estoppel.'"); *Lindsey v. Walker*, No. 18-CV-1024-BBC, 2019 WL 4194909, at *5 (W.D. Wis. Sept. 4, 2019) (alleged interference by prison guards did not excuse untimely filing of notice); *Craig v. Klemmer*, No. 17-CV-288-JPS, 2018 WL 922364, at *6 (E.D. Wis. Feb. 15, 2018) ("There is no equitable basis to excuse Craig's untimely notice.").

While the parties agree that plaintiff's second notice was properly served via certified mail on January 4, 2018[5], plaintiff identified only defendants Doehling and Thompson by name. In contrast, plaintiff only referred to the nurse defendants as "John Does." As the nurse defendants point out, however, the statute requires the notice to state the names of the state employees involved. *See Modica v. Verhulst*, 195 Wis. 2d 633, 647, 536 N.W.2d 466 (1995) (notice of claim statute not satisfied where claimant listed state employee's job title but not employee's name); *Estate of Radley ex rel. Radley v. Ives*, No. 2006AP971, 2006 WL 3842180, *2 (Wis. Ct. App. Dec. 28, 2006) (unpublished) (finding notice of claim deficient because plaintiff "listed the incorrect names for the nurses at issue" in body of notice, even if defendants could be accurately identified in attachments).

Plaintiff also maintains that this omission should be excused because he exercised reasonable diligence to discover the nurses' names, but the Department of Corrections refused to provide them. *See Modica*, 195 Wis. 2d at 648 (suggesting that an exception to the name requirement might exist if the plaintiff exercised reasonable diligence to discover the state employee's identity, then submitted an amended notice of claim that properly identified him or her once discovered). Unfortunately, plaintiff's submissions again fall short. First, he did *not* even request the names until January 30, 2018, more than three months after the last delay in his medication refill and nearly a month after he filed his notice of claim. (Soderlin Aff. (dkt. #52), exh. 1.) Second, at that point, plaintiff still

---

[5]Plaintiff does not dispute defendants' assertion that this notice was valid only as to acts or omissions by any properly-identified state defendants occurring during the 120-period preceding January 4, 2018, or from September 6, 2017 to January 4, 2018. *See E-Z Roll Off, LLC v. Cty. of Oneida*, 2011 WI 71, ¶ 46, 335 Wis. 2d 720, 745, 800 N.W.2d 421, 434 (holding that continuing violations doctrine does not apply to notice of claim statute).

only asked for a copy of DOC's signature verification form, which is confidential. (*Id.* (asking for copy of DOC-3326 (signature verification form)); DAI Policy # 500.50.08 II.K. (for reasons of security or confidentiality, inmate patients may not obtain copies of DOC-3326).) Third, even after HSU advised plaintiff that the form he sought was confidential, plaintiff apparently did not undertake *any* other means to discover the nurses' names until after he filed this lawsuit. Fourth, unlike in *Modica*, it appears plaintiff has *still* not submitted an amended notice of claim properly identifying the defendant nurses.

In light of these circumstances, the court cannot find that plaintiff exercised reasonable diligence to discover the identity of the Doe defendants named in his notice of claim form. Accordingly, the state law claims against defendants Bellin and Johnson must be dismissed as well.[6]

Finally, plaintiff argues that he was not required to file a notice of claim at all, since rather than assert negligence, his state law claims are for medical malpractice. *See* Wis. Stat. § 893.82(5m) (specifically exempting "medical malpractice" claims from the notice of claim requirements). Nurses and non-medical professionals, however, are not covered by Wisconsin's medical malpractice statute, so claims against them are subject to notice of

---

[6] Doehling further argues separately that the state law claims against her should be dismissed because she left her position as HSU Manager on June 17, 2017, and thus she could not be responsible for any injuries sustained by Soderlin within the 120-day time period preceding the January 4, 2018 notice of claim. As noted previously, however, Soderlin has presented evidence suggesting that Doehling was still working in the HSU in September 2017, which would arguably bring her within the 120-day window. In any case, disputes about whether Doehling was personally involved in the alleged deprivations or could be liable for actions taken as the reviewing authority on plaintiff's grievance go beyond the procedural matters raised by the defendants' current motions, and instead, bear on the merits of plaintiff's claims. As such, they would be better addressed in a motion for summary judgment on the merits.

claim requirements. Wis. Stat. § 655. *Tackett v. Jess*, No. 20-1611, 2021 WL 1696241, at *3 (7th Cir. Apr. 29, 2021) ("Non-doctors may not be sued for medical malpractice for the purposes of the notice statute")(citing *Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc.*, 223 Wis.2d 439, 588 N.W.2d 35, 41 (1999)); *Cooper v. Guider*, No. 19-CV-159-JDP, 2020 WL 6684697, at *7 n.4 (W.D. Wis. Nov. 12, 2020) (state law negligence claim against state-employed nurse based on failure to provide proper medication subject to notice of claim requirements).

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment for failure to exhaust (dkts. ## 34, 40) are GRANTED IN PART with respect to any claims concerning delays in receiving refills of fludrocortisone and DENIED IN ALL OTHER RESPECTS.

2. The state defendants' motion to dismiss the state law negligence claims for failure to comply with Wis. Stat. § 893.82 (dkt. # 34) is GRANTED IN PART as to nurse defendants Debra Bellin and Andrea Johnson *and* as to negligence claims against any defendant arising before September 6, 2017, but DENIED IN ALL OTHER RESPECTS.

3. Plaintiff may proceed on his deliberate indifference claims under the Eighth Amendment against all defendants based on allegations concerning his failure to receive medications on or after July 12, 2017, and on his state law negligence claims against defendants Boehling and Thompson for events that took place between September 6, 2017 and January 4, 2018.

Entered this 7th day of July, 2021.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge